**In re Joseph L. SHAKER, Ruth A. Shaker, Debtors.**

**Bankruptcy No. LU7–90–00884.**

United States Bankruptcy Court, W.D. Wisconsin.

Jan. 15, 1992.

Melvyn L. Hoffman, Trustee, pro se.

Robert M. Osborne, Sparta, Wis., for debtors.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy Judge.

This case comes before the Court on an objection by the trustee to the debtors' exemption claim of $17,849.08 in an employee profit-sharing plan and trust. The debtors, Joseph L. and Ruth A. Shaker, are represented by Robert M. Osborne. The trustee is Melvyn L. Hoffman and he is representing himself.

### FACTUAL BACKGROUND

Joseph L. and Ruth A. Shaker filed a Chapter 7 bankruptcy on March 30, 1990. In amended Schedules B–3 and B–4 filed on August 14, 1990, the debtors disclosed the existence of what they referred to as an "IRA" (Individual Retirement Account) in the amount of $17,549.50. The debtors sought to exempt this amount pursuant to § 815.18(31) of the Wisconsin Statutes. After an initial objection filed on August 16, 1990, the trustee concluded that the characterization of the debtors' retirement plan as an "IRA" was erroneous and he accordingly filed an amended objection on August 23, 1990. The trustee asserted that the exemption provided by § 815.-18(31) of the Wisconsin Statutes is unavailable to the debtors because the exemption is subject to federal preemption under the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub.L. No. 93–406, 88 Stat. 829 (codified as amended in numerous sections of Titles 26 and 29 U.S.C.).

The parties have submitted briefs to the Court and have stipulated to the following facts:

1. As of the filing date, the debtor, Joseph L. Shaker, was employed by Brunner Drilling and Manufacturing Co., Inc. He was a participant in the Brunner Employees Profit–Sharing Plan and Trust (Plan), which was established by the debtor's employer for the exclusive benefit of its employees and their dependents.

2. As of the filing date, the debtor's interest in the Plan was 100% vested, with employer contributions totaling $8,775.43, and employee contributions of $9,073.65, for a total of $17,849.08. The employee contributions were made through the mechanism of salary reductions in accordance with Secs. 4.2 and 4.9 of the Plan.

3. The Plan constitutes an "employee benefit plan" for purposes of 29 U.S.C. §§ 1002(2)(A) and 1003(a).

4. It is the intent of the Plan that benefits arising thereunder be "tax-qualified" under 26 U.S.C. §§ 401(a) and 401(k).

5. For purposes of qualifying for tax-deferred treatment of employee benefits and current deductibility of employer contributions, the Plan contains anti-alienation, anti-assignment language which is consistent with the requirements of ERISA § 1056(d) and Internal Revenue Code (I.R.C.) § 401(a)(13), to wit:

9.2 ALIENATION

(a) Subject to the exceptions provided below, no benefit which shall be payable out of the Trust Fund to any person (including a Participant or Beneficiary) shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be void; and no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any such person, nor shall it be subject to attachment or legal process for or against such person, and the same shall not be recognized by the Trustee, except to such extent as required by law.

6. Pursuant to Para. 7.4 of the Plan, the Trustee has the discretion to make loans to Plan participants, subject to certain restrictions on the duration, security for and amount of such loans.

7. Pursuant to Para. 4.2 of the Plan, the debtor is able to withdraw amounts from the Plan while still employed by the Plan sponsor if he has either attained the age of 59½ or is able to demonstrate financial hardship.

8. Pursuant to Paras. 6.4(a) and 6.5(a)(1) of the Plan, upon the participant's termination of employment with the employer, the Trustee is directed to pay and may pay in one lump sum, the entire amount of the "Vested" portion of such terminated participant's benefits.

## ISSUES

This matter raises these issues for the Court's consideration:

1. Whether the debtors' pension plan is excludable from the bankruptcy estate pursuant to the Employment Retirement Income Security Act of 1974 (ERISA) as "applicable nonbankruptcy law" under 11 U.S.C. § 541(c)(2).

2. Whether WIS.STAT. § 815.18(31) "relates to" ERISA pursuant to 29 U.S.C. § 1144(a) and is thereby preempted by it.

3. Whether ERISA's anti-alienation requirement [29 U.S.C. § 1056(d)(1)] constitutes "other federal law" pursuant to § 522(b)(2)(A) of the Bankruptcy Code so as to qualify ERISA plan benefits for exemption from the bankruptcy estate.

## ANALYSIS

This Court initially notes that the issues presented by this case have generated a tremendous amount of litigation and legal commentary in recent years. Numerous courts from a variety of jurisdictions have reached differing results on disparate

grounds on nearly every issue presented by this case. *See generally Retirement Benefits—Exempt and Excluded? Maybe, Maybe Not,* Norton Bankr. Law Adviser (Callaghan) Part 1, No. 10, at 6 (Oct.1990), Part 2, No. 11, at 6 (Nov.1990), Part 3, No. 12, at 3 (Dec.1990), Part 4, No. 1, at 6 (Jan.1991); Golden, *Protecting Qualified Retirement Plans in Bankruptcy,* 2 Faulkner & Gray's Bankr.L.Rev. at 20 (Winter 1991); Sterbach, Weiss, & Salerno, *Pre–Bankruptcy Planning for Professionals and ERISA Qualified Pension Plans: Are State Created Statutory Exemptions D.O.A. in Bankruptcy Proceedings?,* 94 Comm.L.J. 229 (1989); Seiden, *Chapter 7 Cases: Do ERISA and the Bankruptcy Code Conflict as to Whether a Debtor's Interest in or Rights Under a Qualified Plan Can Be Used to Pay Claims?,* First Installment, 61 Am.Bankr. L.J. 219 (1987), Second Installment, 61 Am. Bankr.L.J. 301 (1987); Wohl, *Pension and Bankruptcy Laws: A Clash of Social Policies,* 64 N.C.L.Rev. 3 (1985); Lewell, *ERISA Retirement Plans in Individual Bankruptcy,* 19 U.Mich.J.L.Ref. 183 (1985).

Even given this great divergence of judicial authority as noted by the aforementioned commentators, however, certain lines of reasoning have emerged as a majority view on most of the issues presented here. The Court will consider each of the three issues in turn.

### I. § 541(c)(2) AND "APPLICABLE NONBANKRUPTCY LAW"

The threshold issue before the Court is whether the debtors' profit-sharing plan account is includable in the bankruptcy estate pursuant to 11 U.S.C. § 541(c). That provision provides:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c) (West 1991). The relevant question here is whether the "applicable nonbankruptcy law" language of § 541(c)(2) was meant to encompass only state spendthrift trust law, or whether it also encompasses other federal laws such as ERISA. If the latter is true, then ERISA's anti-alienation provision[1] [§ 206(d)(1) of ERISA; 29 U.S.C. § 1056(d) ] is "[e]nforceable in a case under this title" pursuant to § 541(c)(2). That would mean that creditors in bankruptcy (or the trustee here) could not reach the debtors' assets held in an ERISA-qualified plan.

This question has generated a tremendous amount of litigation in recent years among bankruptcy, district, and circuit courts of appeals. The circuit courts of appeals are currently evenly split on this issue. Many courts have undertaken exhaustive reviews of the legislative history of § 541(c)(2); others have waxed eloquent (at length) about the underlying policies of ERISA and the Bankruptcy Code; still others have done both.

A shrinking majority of these courts, including four circuit courts of appeals, have concluded that the "applicable nonbankruptcy law" language of § 541(c)(2) was meant to encompass only state spendthrift trust law. *See, e.g., Daniel v. Security Pacific Nat'l Bank (In re Daniel),* 771

---

1. § 206(d)(1) states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C.A. § 1056(d)(1) (West Supp.1991).

F.2d 1352, 1360 (9th Cir.1985), *cert. denied* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488, 1490 (11th Cir.1985); *Samore v. Graham (In re Graham)*, 726 F.2d 1268, 1271 (8th Cir. 1984); *Goff v. Taylor (In re Goff)*, 706 F.2d 574, 582–86 (5th Cir.1983); *In re Fullmer*, 127 B.R. 55, 57–58 (D.Utah 1991); *Employee Benefits Committee v. Tabor (In re Cress)*, 127 B.R. 194, 198–99 (S.D.Ind.1991); *In re Velis*, 123 B.R. 497, 508 (D.N.J.), *aff'd in part and rev'd in part, Velis v. Kardanis*, 949 F.2d 78 (3rd Cir.1991); *Clark v. Kazi (In re Kazi)*, 125 B.R. 981, 985 (Bankr.S.D.Ill.1991); *In re Nadler*, 122 B.R. 162, 165–66 (Bankr.D.Mass.1990); *In re Burns*, 108 B.R. 308, 312 (Bankr. W.D.Okl.1989). Some of these and other courts have gone a step further and have held that § 541(c)(2) encompasses only "traditional"—i.e., donative spendthrift trusts and therefore does not under any circumstances apply to retirement accounts or pension plans. *See, e.g., In re Nadler*, 122 B.R. at 169–170; *Morter v. Farm Credit Services*, 110 B.R. 390, 393 (N.D.Ind.1990), *rev'd*, 937 F.2d 354 (7th Cir.1991).

A growing minority of courts, however, including four circuit courts of appeals, have held that the "applicable nonbankruptcy law" language of § 541(c)(2) is not limited to state spendthrift trust law; it includes all state and federal (including ERISA) "nonbankruptcy" law. *See, e.g., Gladwell v. Harline (In re Harline)*, 950 F.2d 669, 673 (10th Cir.1991); *Velis v. Kardanis*, 949 F.2d 78 (3rd Cir.1991); *Shumate v. Patterson*, 943 F.2d 362, 365 (4th Cir. 1991); *Forbes v. Lucas (In re Lucas)*, 924 F.2d 597, 601–02 (6th Cir.), *cert. denied, Forbes v. Holiday Corp. Savings and Retirement Plan*, —— U.S. ——, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); *Anderson v.*

*Raine (In re Moore)*, 907 F.2d 1476, 1478 (4th Cir.1990); *In re Idalski*, 123 B.R. 222, 234–35 (Bankr.E.D.Mich.1991); *Tatge v. Cheaver (In re Cheaver)*, 121 B.R. 665, 666 (Bankr.D.D.C.1990); *In re Majul*, 119 B.R. 118, 123 (Bankr.W.D.Tex.1990); *In re Ralstin*, 61 B.R. 502, 504–06 (Bankr.D.Kan. 1986). *See also John Hancock Mut. Life Ins. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162, 1169–70 (9th Cir.1990) (Fletcher, J. concurring). These courts have therefore held that ERISA benefits which are subject to that Act's anti-alienation provisions are excluded from the bankruptcy estate under § 541(c)(2). *See, e.g., In re Lucas*, 924 F.2d at 600.

The Seventh Circuit, long silent as to this question,[2] has recently addressed it in a case involving state-law provisions restricting access to a retirement plan. *See Morter v. Farm Credit Services*, 937 F.2d 354 (7th Cir.1991). In this decision the Seventh Circuit held that "spendthrift trust" for purposes of the legislative history of § 541(c)(2) is to be interpreted broadly and not limited to traditional—i.e., donative— spendthrift trusts under state law. "The proper inquiry under section 541(c)(2), then, is not whether the accumulated funds are in a 'traditional' spendthrift trust, but whether the retirement plan bars the beneficiary and his creditors from reaching the funds." 937 F.2d at 358. Although *Morter* contains other language which could lead to the conclusion that the Seventh Circuit Court of Appeals is siding with the majority on this issue, the question of whether federal law [i.e., ERISA] falls within the "applicable nonbankruptcy law" language of § 541(c)(2) was not addressed by the court. In addition, the Seventh Circuit in *Morter* seemed to be calling for a broad interpretation of the relevant § 541(c)(2) language. Arguably, then, the

**2.** There are several places where the Seventh Circuit broke this silence and made statements in footnotes of opinions. *See In re Perkins,* 902 F.2d 1254, 1256 n. 1 (7th Cir.1990) ("[t]he legislative history of § 541(c)(2) indicates that Congress enacted the provision in order to exempt spendthrift trusts from the estate."); *In re Kochell,* 732 F.2d 564, 566 n. 3 (7th Cir.1984) (The court rejected the debtor's argument that his interest in a pension plan was not property of

the estate.). The precedential value of these statements is questionable. *See generally, Seiden, supra,* at 336–37. Most lower courts in the Seventh Circuit have held that the phrase "applicable nonbankruptcy law" refers only to state spendthrift trust law. *See, e.g., Employee Benefits Committee v. Tabor (In re Cress),* 127 B.R. 194, 199 (S.D.Ind.1991) (citing numerous courts within the Seventh Circuit); *Clark v. Kazi (In re Kazi),* 125 B.R. 981, 983 (Bankr.S.D.Ill.1991).

Seventh Circuit could intend that nonbankruptcy federal law be included within the ambit of that provision. Given these considerations, this Court interprets *Morter* as not having ruled on this issue and will issue its own decision on that basis.

■ The Court has examined in detail the numerous cases on both sides of this issue and has considered the arguments of the parties. The Court finds the growing minority view to be the better one and accordingly holds that the "applicable nonbankruptcy law" language of 11 U.S.C. § 541(c)(2) can and does include federal law—in this case ERISA's anti-alienation provision [29 U.S.C. § 1056(d)].

Given the enormous amount of judicial precedent already existent on this question, a lengthy analysis or rehashing of that precedent is unnecessary. Several brief comments will suffice. This Court has marveled at the extent to which some courts have gone to examine the legislative history of § 541(c)(2), even to the extent of effectively putting the congressional drafters of that history on the psychologist's couch for analysis. *See, e.g., In re Velis*, 123 B.R. 497, 503–08 (D.N.J.), *aff'd in part and rev'd in part, Velis v. Kardanis*, 949 F.2d 78 (3rd Cir.1991). Like most of the courts taking the minority position, this Court finds the statutory language "applicable nonbankruptcy law" to be abundantly clear and unambiguous. Numerous courts have found likewise. *See, e.g., Gladwell v. Harline (In re Harline)*, 950 F.2d 669, 673 (10th Cir.1991); *Velis v. Kardanis*, 949 F.2d 78, 81 (3rd Cir.1991); *Forbes v. Lucas (In re Lucas)*, 924 F.2d 597, 601 (6th Cir.), *cert. denied, Forbes v. Holiday Corp. Savings and Retirement Plan*, — U.S. —, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); *Anderson v. Raine (In re Moore)*, 907 F.2d 1476, 1477 (4th Cir.1990). When faced with such unambiguous statutory language, the U.S. Supreme Court has repeatedly held that "[t]he sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), *citing with approval Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). *See also Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 808 n. 3, 109 S.Ct. 1500, 1504 n. 3, 103 L.Ed.2d 891 (1989); *Burlington N. R.R. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987).

Although the legislative history of § 541(c)(2) may be replete with references to state spendthrift trust law, it nowhere states that the provision was to be exclusively limited to such law. *See Gladwell v. Harline (In re Harline)*, 950 F.2d 669, 674 (10th Cir.1991); *In re Moore*, 907 F.2d at 1479. This Court finds it inconceivable to interpret "applicable nonbankruptcy law" to mean "applicable state spendthrift trust law." "[I]f Congress had intended § 541(c)(2) to only apply to state spendthrift trusts, the term 'spendthrift trust' would have appeared in the statute, rather than the phrase 'applicable nonbankruptcy law.'" *In re Moore*, 907 F.2d at 1479, *citing with approval In re Ralstin*, 61 B.R. 502, 503 (Bankr.D.Kan.1986). As noted by the Third Circuit in *Velis*, furthermore, Congress repeatedly demonstrated its ability to distinguish between state and federal law in the Bankruptcy Code when such a limitation was intended. *Velis*, 949 F.2d 78, 81.[3] That court further noted instances where Congress used the expression "applicable nonbankruptcy law" in other sections of the Bankruptcy Code to express an intent to include federal law.[4] *Id.*

---

**3.** As examples of instances where Congress specifically referred to state law in the Code, the Third Circuit stated

[1]1 U.S.C. § 109(c)(2) limits Chapter 9 filings to entities authorized to be such debtors under "state law"; 11 U.S.C. § 522(b)(1) sets forth a debtor's exemptions under "state law that is applicable"; 11 U.S.C. § 522(b)(2) sets forth a debtor's exemptions under "state or

local law that is applicable"; and 11 U.S.C. § 523(a)(5) denies discharge of a debt for support pursuant to an order made "in accordance with state or territorial law."

949 F.2d 78, 81. *See also In re Moore*, 907 F.2d 1476, 1478 (4th Cir.1990).

**4.** The court noted the following examples:
[1]1 U.S.C. § 25(d) [sic] uses the phrase "applicable nonbankruptcy law" to exempt post-

"[A] word is presumed to have the same meaning in all subsections of the same statute." *Moore*, 907 F.2d at 1478, *citing with approval Morrison–Knudsen Constr. Co. v. Director, OWCP*, 461 U.S. 624, 633, 103 S.Ct. 2045, 2050, 76 L.Ed.2d 194 (1983).

Nor is this case one of those "[r]are ·cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," thus warranting going beyond the plain meaning of the statute. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989), *citing with approval Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). Some courts have attempted to argue that this issue does present just such a case. They have done so by referencing 11 U.S.C. § 522(d)(10)(E)—the federal exemption for pension benefits, limited to an amount "reasonably necessary for the support of the debtor...." *See* 11 U.S.C. § 522(d)(10)(E) (West 1991). If Congress had intended that all ERISA-qualified plans be excluded from the bankruptcy estate pursuant to § 541(c)(2), the argument continues, then providing a federal exemption for such pension plans would be superfluous. *See, e.g., Samore v. Graham (In re Graham)*, 726 F.2d 1268, 1272–73 (8th Cir. 1984); *In re Nadler*, 122 B.R. 162, 166 (Bankr.D.Mass.1990); *In re Starkey*, 116 B.R. 259, 262 n. 1 (Bankr.D.Colo.1990). The Third Circuit in *Velis* adequately countered this argument by stating

[t]he argument that if "applicable nonbankruptcy law" in § 541(c)(2) includes

both state and federal law, the exemption provisions of § 522(d)(10)(E) would be superfluous or meaningless overlooks the distinctions between the two sections. Section 522 deals with distributions made from a pension plan and distributions which the debtor has a present and immediate right to receive. *Clark v. O'Neill (In re Clark)*, 711 F.2d 21 (3rd Cir.1983). Even if pension plan assets in the hands of a trustee are beyond the reach of creditors because [they are] not part of the debtor's estate under § 541(c)(2), distributions made from the plan to the debtor would not enjoy such protection, in the absence of exemption under § 522(d)(10)(E).

949 F.2d 78, 81. This Court agrees with this reasoning.[5]

For these reasons, then, the Court holds that "applicable nonbankruptcy law" pursuant to 11 U.S.C. § 541(c)(2) includes federal laws such as ERISA. § 206(d) of ERISA [29 U.S.C. § 1056(d) ], as well as the applicable Internal Revenue Code provisions and the Treasury Regulations issued thereunder, specifically prohibit alienation or assignment of the benefits of qualified plans.[6] *See In re Moore*, 907 F.2d at 1480. These prohibitions, therefore, constitute "restriction[s] on the transfer of a beneficial interest of the debtor in a trust" pursuant to § 541(c)(2) and they are thus enforceable in this bankruptcy case. *See* 11 U.S.C. § 541(c)(2) (West 1991). Accordingly, the debtors' profit-sharing plan and trust is excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2).

The Court's holding as to this issue is dispositive of the entire matter. If the

petition disclosure and solicitation statements from the requirements of, inter alia, federal securities laws. Sections 108(a), (b), and (c), 11 U.S.C. § 108, use the phrase to toll the statute of limitations for both federal and state law claims. 11 U.S.C. § 365(n)(1)(B) uses the same phrase in outlining the protection afforded intellectual property under, inter alia, federal copyright laws.

949 F.2d 78, 81. *See also Gladwell v. Harline (In re Harline)*, 950 F.2d 669, 673–674 (10th Cir. 1991) (citing numerous examples of specific federal laws constituting "applicable nonbankruptcy law" as used in various Bankruptcy Code provisions); *In re Moore*, 907 F.2d at 1477–78.

The reference to "applicable nonbankruptcy law" in 11 U.S.C. § 1126(b)(1) is a further example. Like the reference in § 1125(d), this too was meant to include federal securities laws within its ambit. *See* 5 *Collier on Bankruptcy* para. 1126.02 at 1126–9 (15th ed. 1991.)

5. The Tenth Circuit has also noted its agreement with this reasoning. *See In re Harline*, 950 F.2d 669, 675.

6. The parties have stipulated that the plan at issue here is "qualified" for purposes of ERISA and the Internal Revenue Code.

**936**

debtors' pension plan account should subsequently be found to be includable in the bankruptcy estate pursuant to § 541(c), however, the question of whether it would be exemptible from the estate would then arise. Given the extreme divergence of holdings on the § 541(c) issue, the Court will examine the exemption issue and provide alternative holdings on each of the two possible bases upon which the pension account could be exemptible from the bankruptcy estate. Those bases are: 1) pursuant to WIS.STAT. § 815.18(31), the Wisconsin exemption for retirement benefits; or 2) as "other federal law" pursuant to 11 U.S.C. § 522(b)(2)(A). Two other reasons support the Court's issuance of alternative holdings in this matter—the importance of the issues presented here on a national scale and the dearth of case precedent in this district addressing those issues.

## II. PREEMPTION OF STATE LAW AND "IMPAIRMENT" OF THE BANKRUPTCY CODE

The second issue raised in this matter is whether WIS.STAT. § 815.18(31)[7] is preempted by ERISA. § 514(a) of ERISA provides in relevant part:

[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

See 29 U.S.C.A. § 1144(a) (West 1985).

The trustee asserts that WIS.STAT. § 815.18(31) is preempted by ERISA and the debtors' claim that the Plan funds are exempt under that provision is therefore without merit.

Most courts which have addressed the preemption issue have held that ERISA preempts state-created exemptions established pursuant to 11 U.S.C. § 522(b)(2)(A).

See, e.g., Gaines v. Nelson (In re Gaines), 121 B.R. 1015, 1022–23 (W.D.Mo.1990); In re McIntosh, 116 B.R. 277, 280 (Bankr. N.D.Okl.1990); In re Starkey, 116 B.R. 259, 263 (Bankr.D.Colo.1990); In re Martin, 115 B.R. 311, 322–23 (Bankr.D.Utah 1990), aff'd, In re Fullmer, 127 B.R. 55, 59 (D.Utah 1991); In re Messing, 114 B.R. 541, 544–45 (Bankr.E.D.Tenn.), rev'd on other grounds, No. 90–000601 (E.D.Tenn. Dec. 13, 1990), rev'd on other grounds, 944 F.2d 905 (6th Cir.1991); In re Conroy, 110 B.R. 492, 496–97 (Bankr.D.Mont.1990); Fogler v. Flindall (In re Flindall), 105 B.R. 32, 37–40 (Bankr.D.Ariz.1989); In re Komet, 104 B.R. 799, 801–04 (Bankr.W.D.Tex. 1989). Most of these decisions are based on several Supreme Court interpretations of the aforementioned ERISA preemption provision, specifically the "relate to" language contained therein. The Supreme Court has consistently held that a state law "relates to" ERISA if it has a "connection with or reference to" ERISA plans. See Mackey v. Lanier Collections Agency & Service, Inc., 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985); Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983).

The most frequently cited Supreme Court case as to this issue is the aforementioned Mackey decision. That case involved two Georgia statutes, one barring the garnishment of benefit plans subject to ERISA and the other the state's general garnishment provision. A collection agency had obtained money judgments against participants in an employee welfare benefit plan and sought to garnish their plan benefits. Noting that the Georgia anti-garnish-

---

**7.** The current Wisconsin exemption covering employee retirement benefits is contained in § 815.18(3)(j). See WIS.STAT.ANN. § 815.-18(3)(j) (West Supp.1990). The prior provision, § 815.18(31) was recently amended and the new provision took effect on May 4, 1990. Since the debtors filed bankruptcy on March 30, 1990, and since exemptions are determined on the basis of the applicable law on the date of filing, the prior Wisconsin provision is the relevant one for preemption analysis. See 11 U.S.C. § 522(b)(2)(A) (West 1991); Schechter v. Balay (In re Balay), 113 B.R. 429, 440 (Bankr.N.D.Ill. 1990).

ment statute expressly referred to ERISA plans, the Supreme Court held that it was preempted by ERISA. *Mackey,* 486 U.S. at 830, 108 S.Ct. at 2185. The Court so held even after noting the possibility that the anti-garnishment statute was enacted to help effectuate ERISA's underlying purposes. "The pre-emption provision [of § 514(a)] ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Id.* at 829, 108 S.Ct. at 2185, *citing with approval Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985). "Legislative 'good intentions' do not save a state law within the broad pre-emptive scope of § 514(a)." *Mackey,* 486 U.S. at 830, 108 S.Ct. at 2185. As to the Georgia general · garnishment statute, however, the Court held that it was not preempted by ERISA. *Id.* at 841, 108 S.Ct. at 2191. The Court based this holding on the fact that Georgia's garnishment statute did not specifically refer to ERISA plans and that ERISA's preemption provisions did not bar garnishment of ERISA *welfare* benefit plans (as opposed to *pension* benefit plans). *Id.* at 830–38, 108 S.Ct. at 2185–90. *Mackey* has attracted a significant following among courts representing the majority view on this issue. *See, e.g., In re Conroy,* 110 B.R. 492, 496–97 (Bankr.D.Mont.1990); *In re Burns,* 108 B.R. 308, 310–11 (Bankr.W.D.Okl.1989).

Two other Supreme Court cases, however, have provided fuel for a small, smoldering minority position. *See Ft. Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) and *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). In *Shaw* the Supreme Court held, *inter alia,* that a New York human rights law prohibiting discrimination in employee benefit plans on the basis of pregnancy was preempted by ERISA. 463 U.S. at 108, 103 S.Ct. at 2905. The preemption was limited, however, only to the extent that the New York law prohibited practices lawful under federal law.

*Id.* Parts of the state law which were consistent with and necessary to effectuate the joint state/federal enforcement scheme provided for in Title VII of the Civil Rights Act of 1964 were not preempted. The *Shaw* court reasoned that preempting these state laws would modify or impair Title VII in contravention of § 514(d) of ERISA.[8] *See Shaw,* 463 U.S. at 101–02, 103 S.Ct. at 2902–03. As part of its holding, the *Shaw* court stated in a footnote that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100, 103 S.Ct. at 2901, *citing with approval American Telephone and Telegraph Co. v. Merry,* 592 F.2d 118, 121 (2nd Cir.1979).

The other Supreme Court decision that has fueled the minority position on this issue is *Ft. Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). That case involved a Maine statute requiring certain employers, in the event of a plant closing, to provide a one-time severance payment to certain employees. The Supreme Court distinguished between state laws which relate to employee benefit *plans* and those which merely related to employee *benefits.* 482 U.S. at 7–8, 107 S.Ct. at 2215–16. Finding that the Maine statute implicated employee *benefits* and not a benefit *plan,* the Court held that it was not preempted by ERISA. *Id.* at 23, 107 S.Ct. at 2223. In so holding, the Court stated

> [t]he argument that ERISA pre-empts state laws relating to certain employee benefits, rather than to employee benefit *plans,* is refuted by the express language of the statute, the purposes of the pre-emption provision, and the regulatory focus of ERISA as a whole. If a state creates no prospect of conflict with a federal statute, there is no warrant for disabling it from attempting to address uniquely local social and economic problems.

---

**8.** ERISA § 514(d) provides that "[n]othing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." *See* 29 U.S.C.A. § 1144(d) (West 1985).

*Ft. Halifax,* 482 U.S. at 19, 107 S.Ct. at 2221.

A growing number of courts have relied on the *Shaw* footnote and/or *Ft. Halifax* in finding state exemption statutes not to be preempted by ERISA. *See Dyke v. Heitkamp (In re Dyke),* 119 B.R. 536, 538–39 (S.D.Tex.1990), *aff'd,* 943 F.2d 1435 (5th Cir.1991); *In re Vickers,* 116 B.R. 149, 153–54 (Bankr.W.D.Mo.1990), *aff'd, Checkett v. Vickers (In re Vickers),* 126 B.R. 348 (W.D.Mo.1990); *In re Volpe,* 100 B.R. 840, 847–48 (Bankr.W.D.Tex.1989), *aff'd, NCNB Texas Nat'l Bank v. Volpe (In re Volpe),* 120 B.R. 843 (W.D.Tex.1990), *aff'd,* 943 F.2d 1451 (5th Cir.1991).

*In re Volpe* is the most frequently cited case for the minority view on the preemption issue. The bankruptcy court in *Volpe* undertook an extensive review of the preemption doctrine as well as Supreme Court and circuit court precedent applying that doctrine in the ERISA area. 100 B.R. at 846–55. The *Volpe* case challenged the *Mackey* and *Shaw* courts' broad interpretation of the "relate[s] to" language in 29 U.S.C. § 1144(a). *Id.* at 848–49. *Volpe* then drew a fine distinction between "having reference to" and "making reference to" ERISA plans. *Id.* The court concluded that although Texas' exemption statute "makes reference to" ERISA, it does not "have reference to" ERISA and therefore the statute was found not to be preempted. 100 B.R. at 855. Relying on *Shaw,* the *Volpe* court further concluded that any relationship the Texas statute had with ERISA is too "tenuous, remote, or peripheral to relate within the intention of 29 U.S.C. § 1144(a)." *Id.* at 854–55.[9]

When the district court affirmed *Volpe,* however, it did not rely on the bankruptcy court's "having reference to" and "making reference to" distinction. *See NCNB Texas Nat'l Bank v. Volpe,* 120 B.R. 843 (W.D.Tex.1990). Rather, it relied on the aforementioned *Shaw* footnote and the *Ft. Halifax* decision in affirming that the Texas exemption statute was not preempted. *Id.* at 848. The court noted that the Texas statute merely defined a certain category of exempt property and did not affect the relationship between the principal ERISA entities nor seek to regulate the administration of ERISA plans. *Id.*

As noted, both the *Dyke* and *Volpe* decisions were recently affirmed by the Fifth Circuit Court of Appeals. Significant weight has thereby been added to the view that ERISA does not preempt state-created exemptions for pension plans which are consistent with ERISA's overall scheme. The Fifth Circuit developed its preemption analysis and reasoning in its *Dyke* affirmance. *See In re Dyke,* 943 F.2d 1435, 1446–50 (5th Cir.1991). Although the Fifth Circuit relied extensively on *Shaw,* it reached its result on the preemption issue by a different route than those taken by the lower court decisions already addressed. This route involved two steps.

First, the *Dyke* court found that the Texas exemption statute at issue therein "related to" ERISA for purposes of the Supreme Court's *Mackey* decision. 943 F.2d at 1448. The court noted that the Texas statute did indeed make a "passing reference" to ERISA, but it did not base its finding of relation to ERISA on that fact. *Id.* n. 36. The Fifth Circuit seems to thereby expand slightly the Supreme Court's focus in *Mackey* on a literal reference to ERISA as being fatal to a state statute. *See Mackey,* 486 U.S. at 830, 108 S.Ct. at

---

**9.** The *Volpe* decision is attracting a growing following, especially in certain Florida bankruptcy courts. *See, e.g., In re Suarez,* 127 B.R. 73, 78 (Bankr.S.D.Fla.1991); *In re Williams,* 118 B.R. 812, 816 (Bankr.N.D.Fla.1990); *In re Martinez,* 107 B.R. 378, 380–81 (Bankr.S.D.Fla.1989); *In re Bryan,* 106 B.R. 749, 751 (Bankr.S.D.Fla. 1989). *But see First Florida Nat'l Bank v. Smith (In re Smith),* 129 B.R. 262, 264 (M.D.Fla.1991); *In re Sheppard,* 106 B.R. 724, 726–27 (Bankr. M.D.Fla.1989). Other courts have reached the same result as the *Volpe* court—the state exemp-tion statute at issue is not preempted by ERISA—independent of *Volpe's* reasoning or analysis. *See, e.g., Tabor v. Garvin (In re Garvin),* 129 B.R. 598, 601 (Bankr.S.D.Ind.1991); *In re Coffman,* 125 B.R. 238, 239 (Bankr.W.D.Mo. 1991); *In re Nuttleman,* 117 B.R. 975, 982 (Bankr.D.Neb.1990), *aff'd in part and rev'd in part,* 128 B.R. 254 (D.Neb.1991); *In re Layton,* 116 B.R. 995, 1004 (Bankr.S.D.Iowa 1990); *In re Vickers,* 116 B.R. 149, 154 (Bankr.W.D.Mo. 1990), *aff'd, Checkett v. Vickers,* 126 B.R. 348 (W.D.Mo.1990).

2185. The *Dyke* court found that the Texas statute "specifically referred" to ERISA in the *Mackey* sense *not* because of the "passing reference" to it but because the state statute "[c]learly encompasses ERISA-qualified benefit plans." *Dyke*, 943 F.2d at 1448.

In spite of this finding, however, the Fifth Circuit held that the Texas statute was spared preemption because it came within the ambit of one of ERISA's exceptions to its expansive preemption clause. This is the second step in the route followed by the Fifth Circuit in *Dyke*. The applicable exception is found in the aforementioned Section 514(d) of ERISA and is referred to as the "saving clause." That provision provides that "[n]othing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." *See* 29 U.S.C.A. § 1144(d) (West 1985). The *Dyke* court notes that the Bankruptcy Code is itself federal law and further, that it "[r]elies on state law to assist in the implementation and enforcement of its goals." 943 F.2d at 1449. Citing 11 U.S.C. § 522(b)(2), the Court then noted that the Code "[p]ermits the states to set exemption levels appropriate to the locale" as an alternative to the federal exemption scheme contained in § 522(d) of the Code. *Id.* Interpreting ERISA to preempt state-created exemption schemes for retirement benefits, the Court continued, would "[r]elegate many debtors to a federal exemption scheme which might be inappropriate to the locale." *Id.* It was on this basis that the Fifth Circuit held preempting such state exemption schemes would impermissibly "modify or impair" the Bankruptcy Code for purposes of the saving clause of ERISA.

If the ERISA preemption clause is enforced against section 42.0021(a), the preemption clause would impair the ability of the Bankruptcy Code to ensure—through the Texas state exemption scheme—that Texas debtors can get a "fresh start" after bankruptcy. Accord-

ingly, this Court concludes that ERISA section 514(d) saves the Texas state exemption scheme from preemption. ERISA does not preempt section 42.-0021(a) of the Texas Property Code. *Id.* at 1450. Finally, the *Dyke* court noted that its result may have been different if the Texas exemption statute had been inconsistent with the provisions of the Bankruptcy Code. The fact that the federal exemption for retirement benefits is limited to the amount reasonably necessary for the debtor's support[10] and the Texas exemption was unlimited in amount was not found to be significant. *See id.*

Several other lower courts have also held that ERISA does not preempt state-law exemptions for retirement benefits on the same "modify or impair" argument. *See In re Nuttleman*, 117 B.R. 975, 982 (Bankr.D.Neb.1990), *aff'd in part and rev'd in part*, 128 B.R. 254 (D.Neb.1991); *In re Vickers*, 116 B.R. 149, 154 (Bankr. W.D.Mo.1990), *aff'd, Checkett v. Vickers (In re Vickers)*, 126 B.R. 348 (W.D.Mo. 1990). *See also Pitrat v. Garlikov*, 947 F.2d 419, 432 (9th Cir.1991) (Sneed, J., dissenting).

The Ninth Circuit Court of Appeals has recently considered this argument, however, and has rejected it. *See Pitrat v. Garlikov*, 947 F.2d 419 (9th Cir.1991). The *Pitrat* court compared the state laws examined for preemption purposes in *Shaw* with the Arizona exemption statute at issue therein. In finding the Arizona statute preempted by ERISA, the court found that it differed sufficiently from the parts of the New York law which survived preemption in *Shaw*. *Id.* at 429. As part of its reasoning, the *Pitrat* court minimized the importance of the allowance for state-law exemptions in § 522(b)(2)(A) in the overall statutory scheme of the Bankruptcy Code. 947 F.2d at 429. The *Pitrat* court also noted that ERISA and the Arizona exemption statute were in conflict as support for its preemption finding. The conflict found by the court was based on prior Ninth Circuit precedent which held that ERISA's anti-alienation provisions do not protect a

---

**10.** *See* 11 U.S.C. § 522(d)(10)(E) (West 1991).

debtor in bankruptcy. *See Pitrat*, 947 F.2d at 427, *citing with approval Daniel v. Security Pacific Nat'l Bank (In re Daniel)*, 771 F.2d 1352 (9th Cir.1985). Since the Arizona exemption statute, in conjunction with § 522(b)(2)(A) of the Bankruptcy Code, would exempt the pension fund at issue in *Pitrat*, ERISA and the Arizona statute are in conflict. *Pitrat*, 947 F.2d at 427. Thus, the argument concludes, the Arizona statute is preempted. *Id.*

Having conducted this brief review of the leading cases in the majority and minority positions on the issue of ERISA preemption, the Court must now turn to the Wisconsin exemption statute at issue here. That statute provides:

> (31) Employe retirement benefits. (a) The term "plan" as used in this subsection means any retirement, pension, disability, death benefit, stock bonus or profit-sharing plan created by an employer for the exclusive benefit of himself, if self-employed or of some or all of his employes, or their dependents or beneficiaries, to which contributions are made by such employer, or employes, or both, for the purpose of distributing in accordance with such plan to such employes, or their dependents or beneficiaries, the earnings or the principal, or both, of a trust created as part of the plan, or annuity, insurance or other benefits under such a plan whether or not purchased by a trust; if it is impossible under a trust created as part of a plan at any time prior to the satisfaction of all liabilities with respect to employes and their dependents and beneficiaries under the trust, for any part of the corpus or income to be at any time used for or diverted to purposes other than for the exclusive benefit of such employes, or their dependents or beneficiaries. The term "employer" as used in this subsection shall be deemed to include a group of employers creating a combined plan for the benefit of their employes or the beneficiaries of such employes.
>
> (b) The income arising from any personal property held in any employes' trust created as part of a plan may be permitted to accumulate in accordance with the terms of said trust and the plan of which said trust forms a part for such time as may be necessary to accomplish the purposes for which such trust has been created. Any such employes' trust shall not be deemed to be invalid as violating the rule against perpetuities or any law or rule against perpetuities or the suspension of the power of alienation of title to property, but such a trust may continue for such time as may be necessary to accomplish the purposes for which it has been created.
>
> (c) The interest of any person in any employes' benefit plan as defined in this subsection and any pension or other benefit derived therefrom shall not be subject to any garnishment, attachment, execution, sequestration, levy or any other legal or equitable process and no assignment of any such interest, pension or other benefit shall be valid or recognized.

WIS.STAT.ANN. § 815.18(31) (West 1977) (current version at WIS.STAT.ANN. § 815.18(3)(j) (West Supp.1990)).

The Court has examined this statute in light of the judicial precedent reviewed above and has carefully considered the arguments of the parties. On the basis of this review the Court concludes that § 815.18(31) of the Wisconsin Statutes "relates to or has a connection with" ERISA plans for preemption purposes but is saved from preemption by operation of 29 U.S.C. § 1144(d)—the "saving clause" of ERISA. In so holding, the Court closely allies itself with the recent aforementioned decision of the Fifth Circuit in *Heitkamp v. Dyke (In re Dyke)*, 943 F.2d 1435 (5th Cir.1991). The preemption issue and the saving clause issue will each be considered in turn.

Several considerations convince the Court that its preliminary preemption finding is the proper one. First, this Court and others which have interpreted WIS.STAT. § 815.18(31) have consistently held that it is "[e]xceptionally broad in scope." *See, e.g., In re Staniforth*, 116 B.R. 127, 131 (Bankr.W.D.Wis.1990); *In re Woods*, 59 B.R. 221, 223 (Bankr.W.D.Wis.1986). This breadth is apparent in the extremely broad and elaborate definition of "plan" in the

statute. *See* WIS.STAT.ANN. § 815.18(31) (West 1977).

Second, ERISA's preemption provision itself is likewise extremely broad. As noted, ERISA preempts *"any and all* State laws insofar as they may now or hereafter relate to *any* employee benefit plan...." *See* 29 U.S.C.A. § 1144(a) (West 1985) (emphasis added). As reviewed earlier, Supreme Court decisions addressing this provision have consistently interpreted it very broadly. *See, e.g., Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Given the extremely broad reach of both the Wisconsin exemption provision and ERISA's preemption provision, it would be very difficult if not impossible for this Court to find that the former does not "relate to" ERISA plans for purposes of 29 U.S.C.A. § 1144(a).

Third, the Court notes the fact that Wisconsin's exemption provision makes no express reference whatsoever to either ERISA or the Internal Revenue Code. This fact could provide the basis for a strong argument that the Wisconsin statute does not therefore "relate to" ERISA in the sense prohibited by *Mackey* and its progeny.[11] On this basis then, Wisconsin's exemption provision would arguably not be preempted by ERISA. While the fact that the Wisconsin statute expressly references neither ERISA nor the Internal Revenue Code is not insignificant, the Court finds that fact, standing alone, insufficient to save it from preemption. As discussed previously, ERISA's broad preemptive reach is not merely triggered by an express reference to ERISA in the state statute at issue. Supreme Court precedent has consistently interpreted the "relates to" language of 29

U.S.C. § 1144(a) as including state laws having a *"[c]onnection with* or reference to ..." ERISA plans. *See Mackey*, 486 U.S. at 829, 108 S.Ct. at 2185; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. at 47, 107 S.Ct. at 1553; *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. at 739, 105 S.Ct. at 2389; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 96–97, 103 S.Ct. at 2899–2900 (emphasis added). The aforementioned broad scope of WIS.STAT. § 815.18(31) clearly gives it a "[c]onnection with [ERISA plans]." *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2900. ERISA qualified plans would fall within the parameters of the Wisconsin exemption provision. § 815.18(31) expressly pertains, moreover, to employee retirement benefits and plans providing for them.[12] Supreme Court pronouncements about such statutes are unequivocal. "[W]e have virtually taken it for granted that state laws which are specifically designed to affect employee benefit plans are preempted under [29 U.S.C. § 1144(a)]." *Mackey*, 486 U.S. at 829, 108 S.Ct. at 2185, *citing with approval Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). This Court's analysis as to the "relate to" language for preemption purposes is supported by the Fifth Circuit's reasoning in its *Heitkamp v. Dyke* decision, involving a Texas exemption statute similar to the Wisconsin statute at issue here. *See Heitkamp v. Dyke (In re Dyke )*, 943 F.2d 1435, 1448 (5th Cir.1991).

Fourth, the limited Supreme Court precedent relied on by *Volpe* and its progeny does not save the Wisconsin statute from preemption. Section 815.18(31)(c) explicitly enters into a field expressly regulated by § 206(d) of ERISA (the anti-alienation provision). Given the broad sweep of § 815.-18(31), it is plainly not a statute which "[a]ffect[s] employee benefit plans in too

---

**11.** Several Iowa bankruptcy courts have used this argument to hold that the Iowa pension exemption statute is not subject to ERISA preemption. *See, e.g., In re Lingle,* 119 B.R. 672, 676 (Bankr.S.D.Iowa 1990); *In re Bartlett,* 116 B.R. 1015, 1023 (Bankr.S.D.Iowa 1990) ("[the Iowa pension exemption statute] cannot be construed as making any reference to ERISA or to attendant IRS provisions. Thus it is not preempted by ERISA....")

**12.** The subsection is titled "[e]mployee retirement benefits." *See* WIS.STAT.ANN. § 815.-18(31) (West 1977).

tenuous, remote, or peripheral a manner...." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Nor is the Supreme Court's emphasis on statutes affecting *benefits* as opposed to those affecting benefit *plans* in the *Fort Halifax* decision helpful here. Wisconsin's exemption provision expressly refers to benefit *plans* numerous times and defines that term very broadly. *See* WIS.STAT.ANN. § 815.18(31) (West 1977). In addition, the argument relied upon by the district court in *Volpe*—that the state statute merely defines a certain category of exempt property and does not attempt to regulate the terms and conditions of an employee benefit plan, thus saving it from preemption—is equally unavailing here. *See NCNB Texas Nat'l Bank v. Volpe (In re Volpe)*, 120 B.R. 843, 848 (W.D.Tex.1990). The Supreme Court subsequently considered this argument and rejected it. *See Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, ——, 111 S.Ct. 478, 484, 112 L.Ed.2d 474, 485 (1990) ("Had Congress intended to restrict ERISA's preemptive effect to state laws purporting to regulate plan terms and conditions, it surely would not have done so by placing the restriction in an adjunct definition section while using the broad phrase "relate to" in the pre-emption section itself.").[13]

For these reasons, then, the Court holds that, unless an exception to ERISA's preemptive reach is applicable, WIS.STAT. § 815.18(31) is preempted by ERISA. As already noted, however, the Court further holds that the Wisconsin exemption provision is saved from preemption pursuant to 29 U.S.C. § 1144(d)—ERISA's "saving clause."

That clause provides that "[n]othing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." *See* 29 U.S.C.A. § 1144(d) (West

1985). Specifically, the Court holds that preempting Wisconsin's exemption provision for retirement benefits would impermissibly modify or impair the exemption scheme contemplated in the Bankruptcy Code. In so holding, this Court aligns itself with the reasoning of the Fifth Circuit Court of Appeals when it stated

> [i]f this Court were to interpret ERISA to preempt provisions of the state exemption schemes, the states would be unable to set enforceable exemption levels on retirement benefits. This would relegate many debtors to a federal exemption scheme which might be inappropriate to the locale. As a consequence, the enforcement scheme contemplated in the Bankruptcy Code would be modified and impaired.

*Heitkamp v. Dyke (In re Dyke)*, 943 F.2d 1435, 1449 (5th Cir.1991).

This Court further finds that the Congressional grant of authority to the states to create state-law exemptions as an alternative to the federal scheme provided for in 11 U.S.C. § 522(d) is an integral part of the Bankruptcy Code.[14] As noted by the Fifth Circuit, "[t]he principal goal of the Bankruptcy Code is to ensure that a debtor comes out of bankruptcy with adequate possessions to have a 'fresh start.'" *In re Dyke*, 943 F.2d at 1449, *citing* H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 126, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6087. Given that the fresh start is a principal goal of the Code, the importance of the debtor's right to exempt certain property from the bankruptcy estate cannot be underestimated. This contention is borne out by the legislative history of § 522; the original Senate bill for that section proposed allowing state law to exclusively govern the allowable exemptions in bankruptcy—as it had under the Bankruptcy Act of 1898.[15] *See* S.Rep. No. 95–989, 95th Cong.,

---

**13.** The Ninth Circuit Court of Appeals relied on the *Ingersoll–Rand* holding in a recent decision rejecting this same argument. *See Reed v. Drummond (In re Reed)*, 951 F.2d 1046, 1048 n. 1 (9th Cir.1991).

**14.** The Seventh Circuit has likewise recognized the importance and the constitutionality of the

state-law exemptions in the overall Bankruptcy Code scheme. *See, e.g., In re Thompson*, 867 F.2d 416 (7th Cir.1989); *In re Sullivan*, 680 F.2d 1131 (7th Cir.1982).

**15.** *See* Bankruptcy Act of 1898, 30 Stat. 544, 548 (1898) (repealed 1978).

2d Sess. 6 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5792.

The importance of the state-law alternative in the overall exemption scheme of the Bankruptcy Code is also shown by the inclusion of the "opt-out" provision in § 522(b)(1).[16] This provision allows states to "opt out" of the federal exemption scheme alternative, thus leaving state-law exemptions as the only choice for debtors in the states which have chosen to do so. The fact that the federal exemptions were made completely optional, combined with the fact that a substantial majority of states [17] have elected to "opt out," underscores the importance of the state-law exemptions in both the theory and the current practical application of the Bankruptcy Code.

The importance of the particular exemption at issue in this case—employee retirement benefits—should also be emphasized here. The fact that the federal scheme includes an express provision for exemption of pension plan benefits [18] accentuates the importance which Congress attached to this specific exemption. The legislative history of that provision likens pension benefits to future earnings of the debtor. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 362 (1977), 1978 U.S.C.C.A.N. 6317–6318. In addition, all fifty states provide in their state laws for an exemption for at least some pension benefits; at least 39 states have enacted legislation exempting ERISA–qualified pension plans.[19] *See* 7 *Collier on Bankruptcy* (15th ed. 1991). These facts indicate the importance attached to exemptions for pension benefits by both Congress and a substantial majority of the state legislatures.

A finding of preemption of a state exemption for pension benefits, moreover, is especially devastating for those debtors in the 35 states which have "opted out" of the federal exemption scheme to date. Such debtors are often left with no allowable exemption for pension benefits—since the federal exemption in § 522(d)(10)(E) is not available, and the state-law exemption is judicially interpreted to "relate to" ERISA and is therefore held to be preempted. *See generally* Sterbach, Weiss, & Salerno, *supra,* at 230–31. The principal purpose of the Bankruptcy Code—affording the debtor a fresh start—is thereby thwarted by denying the debtor a significant portion of her "future earnings"—her pension benefits. Thus an "opt-out" state debtor who had contributed part of her earnings to a pension fund for 40 years in anticipation of a financially secure retirement could suddenly find her entire pension wiped-out in bankruptcy. As already noted, the federal Bankruptcy Code in the § 522(d)(10)(E) exemption (or the authorized state-law alternatives to it) sought to avoid this result. ERISA, another federal statutory scheme, had as its fundamental purpose the insurance of financial security for millions of Americans. Yet through a confusing myriad of judicial machinations involving cases where these two federal laws come together, the aforementioned debtor emerges from the bankruptcy courthouse pensionless. Two federal statutes of enormous importance—ERISA and the Bankruptcy Code—each sought to avoid this very result by similar means. It seems incomprehensible to this Court, when construing these two statutes together, to reach a result which each statute construed separately

**16.** § 522(b)(1) provides that "[exempt property is] property that is specified under subsection (d) [the federal law exemptions] of this section, *unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; ...*." *See* 11 U.S.C. § 522(b)(1) (West 1991) (emphasis added).

**17.** Thirty-five states have "opted out" of the federal exemption scheme provided for in 11 U.S.C. § 522(d). *See* 7 *Collier on Bankruptcy* at 1 n. 6 (15th ed. 1991). Wisconsin has not "opted out";

thus Wisconsin debtors can choose either the federal exemption scheme or the exemptions allowable under state law.

**18.** *See* 11 U.S.C. § 522(d)(10)(E) (West 1991).

**19.** Some of the state statutes expressly refer to ERISA–qualified pension plans; others are broadly-worded exemptions which would arguably include ERISA–qualified plans. *See generally* Sterbach, Weiss, & Salerno, *supra,* at 257–67.

would in most cases prohibit—a pensionless debtor.

It is these considerations of statutory language, legislative history, and policy concerns which lead this Court to find that preempting WIS.STAT. § 815.18(31) would impermissibly modify or impair the Bankruptcy Code pursuant to 29 U.S.C.A. § 1144(d)—the ERISA "saving clause." Given the especial importance attached by this Court to the state-law exemption alternative in the overall bankruptcy scheme, that alternative cannot be removed without impairing the Bankruptcy Code.

In so holding, this Court disagrees with the aforementioned Ninth Circuit result in *Pitrat v. Garlikov*, 947 F.2d 419 (9th Cir. 1991), especially that court's minimization of the importance of the state-law exemption alternative in the overall bankruptcy scheme. As to that alternative, the Ninth Circuit noted that

> [t]he bankruptcy code, 11 U.S.C. § 522, provides certain federal exemptions for the debtor in bankruptcy. The bankruptcy code, as a whole, is set up to operate independently of any state action. The bankruptcy code would not be impaired if there were no state law exemptions at all for it to enforce. Thus since the bankruptcy code can operate in a perfectly effective manner without any state law, it is not impaired by the failure of a particular state exemption law.

*Id.* at 429.

This reasoning seems to ignore one very important consideration—the fact that Congress granted states the authority to "opt out" of the federal scheme in 11 U.S.C. § 522(b)(1). It also seems to ignore the reality of current exemption options available to most debtors in this country—35 states have "opted out" of the federal exemption scheme. It is perhaps true, when viewed in a vacuum, that "[t]he bankruptcy code can operate in a perfectly effective manner without any state [exemption]

law." *Pitrat*, 947 F.2d at 429. This Court cannot examine this issue in such a vacuum. Recognizing the facts that: 1) 35 states have "opted out" of the federal scheme; 2) state-law exemptions are thus the only remaining option for debtors in those states; and 3) exemptions play a vital role in providing the debtor with a fresh start, this statement is simply not tenable.

Nor does this Court find useful the *Pitrat* court's detailed comparison of state exemption laws with the New York law saved from preemption by the Supreme Court in *Shaw*. *Shaw* involved provisions of human rights law where effective state/federal enforcement of Title VII of the Civil Rights Act of 1964 was a primary concern. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 102–103, 103 S.Ct. 2890, 2902–2903, 77 L.Ed.2d 490 (1983). In involving itself in a copious comparison of the role of state exemption laws in the overall Bankruptcy Code scheme with the role of state fair employment laws in the federal enforcement scheme of Title VII (as examined by *Shaw*) the *Pitrat* court compares apples to oranges. This Court finds the *Shaw* facts to be too far afield from the *Pitrat* facts (or the facts at issue here) to provide a useful basis for comparison. Effective enforcement was the touchstone there; effective rehabilitation of the debtor, i.e. the fresh start, is the touchstone here, as it is in all bankruptcy cases. This Court chooses, as it must, to consider the facts before it in light of that touchstone. Recognizing the vital role that adequate exemptions play in effectively rehabilitating the debtor compels the conclusion that denying those exemptions provided by Wisconsin law would modify or impair the Bankruptcy Code.

One final consideration should be noted. The Wisconsin retirement benefit exemption at issue here is unlimited as to the amount exemptible.[20] The federal exemption in § 522(d)(10)(E) is limited to an

---

20. The current version of the Wisconsin exemption for retirement benefits limits the amount exemptible in certain plans—"owner dominated plans" or plans of "owner-employee[s]" (as defined in the statute)—to an amount "[r]easonably necessary for the support of the debtor and the debtor's dependents." *See* WIS.STAT.ANN. § 815.18(3)(j) (West Supp.1991). The exemption provision in effect at the time of the debtor's filing was unlimited as to the amount exemptible.

amount "[r]easonably necessary for the support of the debtor." This difference is not significant for the Court for purposes of its preemption analysis. Nor was it significant for the Fifth Circuit in its *Dyke* decision. *See Heitkamp v. Dyke (In re Dyke)*, 943 F.2d 1435, 1450 n. 40 (5th Cir. 1991).[21] As will be noted in Part III of this decision, moreover, numerous state exemptions differ from each other and from the federal exemptions in the amount exemptible. Such differences are an inevitable result of Congress' grant of authority to the states to promulgate their own exemption laws. *See* 11 U.S.C. § 522(b)(2)(A) (West 1991). "Federal courts have repeatedly recognized that the state exemptions which a bankrupt may elect to claim may be more or less generous than federal exemptions." *England v. Golden (In re Golden)*, 789 F.2d 698, 700 (9th Cir.1986), *citing with approval McManus v. AVCO Financial Services, Inc. (In re McManus)*, 681 F.2d 353, 355–56 (5th Cir.1982); *In re Sullivan*, 680 F.2d 1131, 1137 (7th Cir.), *cert. denied*, 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982). The fact that Wisconsin's exemption is more generous as to certain debtors than the federal exemption, therefore, does not make it inconsistent with the Bankruptcy Code for preemption purposes.

In summary then, the Court holds that, although WIS.STAT. § 815.18(31) "relates to" ERISA for purposes of preemption analysis, the Wisconsin statute is saved from preemption pursuant to 29 U.S.C. § 1144(d).[22] Invalidating the Wisconsin exemption provision for retirement benefits would impermissibly modify or impair federal law—namely § 522 of the Bankruptcy Code.[23] Accordingly, the trustee's objection to the debtors' exemption claim of $17,849.08 in an employee profit-sharing plan and trust is denied.

As will be seen by the Court's holding as to the third and final issue raised in this matter, moreover, even if the Wisconsin exemption for retirement benefits is subsequently found to be preempted by ERISA, the debtors would still be able to claim

---

**21.** The *Dyke* court noted that the Supreme Court's reliance on the "saving" clause of ERISA in *Shaw* operated to preserve only those provisions of New York's human rights law which were consistent with Title VII. *See Dyke*, 943 F.2d at 1449, *citing Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103, 103 S.Ct. 2890, 2903, 77 L.Ed.2d 490 (1983). Like the *Dyke* court's analysis concerning the Texas exemption at issue there, this Court finds Wisconsin's exemption for retirement benefits to be consistent with both the overall purpose of the Bankruptcy Code, as well as with the specific federal exemption for retirement benefits in § 522(d)(10)(E). *See Dyke*, 943 F.2d at 1450.

**22.** The precedential value of this holding is somewhat limited, however, since as noted, § 815.18(31) has been repealed and rewritten.

**23.** In so holding, the Court does *not* conclude that § 522(b)(2)(A) "federalizes" the Wisconsin exemption so as to preclude its preemption. Although this argument is similar to the "modify and impair" analysis upon which the Court bases its finding here, it is distinguishable. The focus in the latter analysis is on the impairment of *federal* law—the Bankruptcy Code—through the voiding of state laws which make up an integral part of the federal scheme. The Supreme Court in *Shaw* rejected this "federalizing" of state law argument and at the same time distinguished it from the impairment argument relied upon by this Court:

[t]he Court of Appeals properly rejected the simplistic "double saving clause" argument—that because ERISA does not pre-empt Title VII, and Title VII does not pre-empt state fair employment laws, ERISA does not pre-empt such laws.... Title VII does not transform state fair employment laws into federal laws that § 514(d) [the ERISA "saving clause"] saves from ERISA pre-emption. Furthermore, since Title VII's saving clause applies to all state laws with which it is not in conflict, rather than just to nondiscrimination laws, and since many federal laws contain nonpreemption provisions, the double saving clause argument, taken to its logical extreme, would save almost all state laws from pre-emption. The question whether pre-emption of state fair employment laws would "impair" Title VII, in light of Title VII's reliance on state laws and agencies, is the more difficult question we address in the text.

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 101, 103 S.Ct. 2890, 2902, 77 L.Ed.2d 490 (1983). Most lower courts which have considered the "federalization" of state law argument have also rejected it. *See, e.g., Reed v. Drummond (In re Reed)*, 951 F.2d 1046, 1048–1049 (9th Cir.1991); *Gaines v. Nelson (In re Gaines)*, 121 B.R. 1015, 1023 (W.D.Mo.1990); *In re Felts*, 114 B.R. 131, 132–33 (Bankr.W.D.Tex.1990), *aff'd, Heitkamp v. Dyke (In re Dyke)*, 943 F.2d 1435 (5th Cir.1991); *Penick v. Hirsch (In re Hirsch)*, 98 B.R. 1, 2 (Bankr.D.Ariz.1988), *aff'd, Siegel v. Swaine (In re Siegel)*, 105 B.R. 556 (D.Ariz.1989).

their retirement plan as exempt—on the basis of 11 U.S.C. § 522(b)(2)(A).

## III. § 522(b)(2)(A) AND ERISA AS "OTHER FEDERAL LAW"

The third and final issue before the Court is whether the anti-alienation, anti-assignment requirement of ERISA § 206(d) [29 U.S.C. § 1056(d)] [24] constitutes "other federal law" pursuant to 11 U.S.C. § 522(b)(2)(A) so as to exempt ERISA–qualified plan benefits from the property of the estate.

11 U.S.C. § 522(b)(2)(A) provides in relevant part:

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection ...
>
> (1) ...
>
> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition....

11 U.S.C. § 522(b)(2)(A) (West 1991). If ERISA is included in the "[F]ederal law, other than subsection (d)" ["other federal law"] language of that provision, then ERISA's bar on alienation and assignment for qualified plans would be carried over into bankruptcy. The end result would be that debtors could exempt ERISA–qualified plans from the property of their estate in bankruptcy.

A clear majority of courts which have addressed this issue, including four circuit courts of appeals, have held that ERISA does not constitute "other federal law" for purposes of 11 U.S.C. § 522(b)(2)(A). *See, e.g., Daniel v. Security Pacific Nat'l Bank (In re Daniel)*, 771 F.2d 1352, 1360–61 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488, 1490–92 (11th Cir.1985); *Samore v. Graham (In re Graham)*, 726 F.2d 1268, 1274 (8th Cir.1984);

*Goff v. Taylor (In re Goff)*, 706 F.2d 574, 586 (5th Cir.1983); *In re Gribben*, 84 B.R. 494, 497 (S.D.Ohio 1988); *In re Conroy*, 110 B.R. 492, 497–99 (Bankr.D.Mont.1990); *In re Brown*, 95 B.R. 216, 219 (Bankr. N.D.Okl.1989).

A small but growing minority of courts have held that ERISA's anti-alienation provision does constitute "other federal law" under 11 U.S.C. § 522(b)(2)(A), thus making those benefits exempt from creditors' claims. *See In re White*, 131 B.R. 526, 530 (Bankr.D.Mass.1991); *In re Suarez*, 127 B.R. 73, 79–80 (Bankr.S.D.Fla.1991); *In re Majul*, 119 B.R. 118, 124 (Bankr.W.D.Tex. 1990); *In re Starkey*, 116 B.R. 259, 264–65 (Bankr.D.Colo.1990); *In re Messing*, 114 B.R. 541, 550 (Bankr.E.D.Tenn.), *rev'd*, No. 90–000601 (E.D.Tenn. Dec. 13, 1990), *rev'd*, 944 F.2d 905 (6th Cir.1991); *In re Felts*, 114 B.R. 131, 133–34 (Bankr.W.D.Tex. 1990), *aff'd on other grounds, In re Dyke*, 943 F.2d 1435 (5th Cir.1991); *In re Burns*, 108 B.R. 308, 315 (Bankr.W.D.Okla.1989); *In re Komet*, 104 B.R. 799, 816–17 (Bankr. W.D.Tex.1989); *Barr v. Hinshaw (In re Hinshaw)*, 23 B.R. 233, 236 (Bankr.D.Kan. 1982). *See also In re Conroy*, 110 B.R. 492, 498 (Bankr.D.Mont.1990).

The seminal case among the majority position and upon which many courts have relied is *Goff v. Taylor (In re Goff)*, 706 F.2d 574 (5th Cir.1983). In *Goff*, the court held that certain retirement trust accounts of the debtor were property of the estate pursuant to 11 U.S.C. § 541(c)(2). *Id.* at 580–81. The *Goff* court then went on to examine whether ERISA § 206(d)(1) [29 U.S.C. § 1056(d)(1)], ERISA's anti-alienation provision, constituted "other Federal law" for purposes of § 522(b)(2). *Id.* at 582–86. Since the *Goff* court was not faced with this issue, that part of its opinion is dicta.

The court in *Goff* examined the legislative history of 11 U.S.C. § 522(b)(2)(A) and cited a list of illustrative property which might be exempted under other federal laws. The list is found in the House and

---

**24.** § 206(d)(1) states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C.A. § 1056(d)(1) (West Supp.1991).

Senate reports to § 522 and contains the following examples:

Foreign Service Retirement and Disability payments, 22 U.S.C. 1104;

Social security payments, 42 U.S.C. 407;

Injury or death compensation payments from war risk hazards, 42 U.S.C. 1717;

Wages of fishermen, seamen, and apprentices, 46 U.S.C. 601;

Civil service retirement benefits, 5 U.S.C. 729, 2265;

Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C. 916;

Railroad Retirement Act annuities and pensions, 45 U.S.C. 288(L);

Veterans benefits, 45 U.S.C. 352(E);

Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. 3101; and

Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. 175.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 75, *reprinted* in 1978 U.S.C.C.A.N. 5787, 5861; H.Rep. No. 95–595, 95th Cong.2d Sess. 360 (1977), *reprinted* in 1978 U.S.C.C.A.N. 5963, 6316.

The court in *Goff* then examined two lower court decisions which had considered the legislative history and had reached "diametrically opposite interpretations of the scope of this provision [§ 522(b)(2)(A) ] relative to ERISA–qualified pension plans." *Goff*, 706 F.2d at 583. Those cases were *Samore v. Graham (In re Graham)*, 24 B.R. 305 (Bankr.N.D.Iowa 1982) (holding that ERISA–qualified pension plans were not intended by Congress to be within the statutory exemption) and *Barr v. Hinshaw (In re Hinshaw)*, 23 B.R. 233 (Bankr. D.Kan.1982) (holding that ERISA–qualified plans are within the statutory exemption). The *Goff* court then sided with the result in *Graham* and stated:

[t]he failure of Congress to include ERISA in its listing of illustrative federal statutes is highly probative of congressional intent that ERISA was not within the group of "federal law" based exemptions. ERISA, a comprehensive and much-debated statute with sweeping cov-

erage was enacted in 1974; the House and Senate reports on the subsequently enacted Bankruptcy Code Section 522(b)(2)(A) were issued in 1977 and 1978 respectively. Congress knew of the previously-enacted ERISA when drafting Section 522(b)(2)(A), yet neither the House nor the Senate deemed fit to include it within their respective illustrative lists. Congress did refer to ERISA where it wanted to do so in other provisions of the Code....

Certainly, therefore, Congress did not "overlook" ERISA. Given the extensive and general reach of ERISA–qualified plans, it is highly improbable that Congress intended their inclusion without mention in the Section 522(b)(2)(A) exemption in the midst of a listing of significantly less comprehensive and less well known statutes. The often-stated admonition that it may be treacherous to attach great weight to congressional silence in interpreting its laws does not apply in this case in light of the comprehensive consideration of this issue which is revealed by this history.

*Goff*, 706 F.2d at 584–85. *Goff* then made two final points to support its conclusion. First, it noted that the anti-alienation provisions contained in the federal statutes in the illustrative list were absolute prohibitions, while that in ERISA was contingent. "ERISA merely provides that *as a condition of obtaining qualified status*—with its attendant tax and other benefits—a pension plan must preclude alienation...." 706 F.2d at 585 (emphasis in original). Second, the *Goff* court noted that the nature of the "property" covered by ERISA differed from that covered under the other statutes on the illustrative list. "While it is true that ERISA and the cited statutes share the common denominator of 'pension and welfare' benefits, the *private pension and welfare benefits sweepingly regulated* by ERISA [footnote omitted] differ considerably from the *public funded and/or created pension and welfare systems* [footnote omitted], or the *few exceptional, traditionally guarded industries.*" 706 F.2d at 586 (emphasis in original).

On the basis of this analysis, then, *Goff* held that ERISA's anti-alienation provisions were not meant to come under the "other federal law" exemption of § 522(b)(2)(A). As noted, most of the cases which have followed the majority view have relied extensively on *Goff*'s dicta with little or no additional analysis. *See In re Komet*, 104 B.R. 799, 808 n. 21 (Bankr. W.D.Tex.1989). This includes the three other circuit courts of appeals which have sided with the majority. *See In re Daniel*, 771 F.2d 1352, 1359 (9th Cir.1985); *In re Lichstrahl*, 750 F.2d 1488, 1491 (11th Cir. 1985); *In re Graham*, 726 F.2d 1268, 1273–74 (8th Cir.1984). The *Graham* court did add the phrase "peculiarly federal in nature" in referring to the types of property included in the illustrative list in the legislative history of § 522(b)(2)(A). *See Graham*, 726 F.2d at 1274. Numerous later decisions have used this phrase in justifying their support for what has become the majority view. *See, e.g., In re Lichstrahl*, 750 F.2d at 1491; *In re Conroy*, 110 B.R. 492, 498 (Bankr.D.Mont.1990); *In re Toner*, 105 B.R. 978, 982 (Bankr.D.Colo.1989).

Turning to the minority position, the seminal case is clearly *In re Komet*, 104 B.R. 799 (Bankr.W.D.Tex.1989). The *Komet* court challenged the reasoning of the *Goff* court and its progeny and in a detailed, four-part analysis, held that ERISA plans are eligible for exemption under the "other federal law" scheme of § 522(b)(2)(A). *Id.* at 816. First, *Komet* points out that the anti-alienation language mandated by ERISA § 206(d)(1) does not merely serve the function of qualifying pension plans for favorable tax treatment, as was asserted by *Goff*. *Komet* notes that ERISA contains both civil and criminal penalties for persons violating the provisions of Part 1 of ERISA—where the anti-alienation provisions are found. It further notes that tax benefits are merely a means to induce voluntary compliance with ERISA's labor regulations; they are not an end in themselves. 104 B.R. at 809. In other words, Congress did not require ERISA plans to contain anti-alienation provisions merely to secure favorable tax treatment for those plans. Rather, the re-

verse is true. Congress established favorable tax status for qualifying plans as an inducement for voluntary compliance with ERISA's anti-alienability mandate. Under this view, the anti-alienability provision is the end and the tax benefits part of the means, rather than the other way around. As noted by *Komet*, the fact that ERISA imposes civil and criminal liability for non-compliance with its mandate of anti-alienability supports the assertion that it is the anti-alienability which is of primary importance, not the tax benefits. *See Komet*, 104 B.R. at 809.

Second, *Komet* challenges the *Goff* court's interpretation of the congressional policy behind §§ 541 and 522 of the Bankruptcy Code. *Goff* had concluded that Congress intended through § 541 to broaden the concept of "property of the estate" while at the same time limiting any exemption of pension funds through § 522. *Goff*, 706 F.2d at 587. *Komet* examined these two provisions at length and reached a very different conclusion. *Komet* found that Congress did not intend through § 541 to expand the "property of the estate" concept; rather, its main intent was to achieve national uniformity among the many disparate state laws governing that concept and to broaden the jurisdiction of the bankruptcy courts. 104 B.R. at 810.

As to § 522, that provision was meant to provide debtors with adequate exemptions so as to assure them a fresh start. Congress created a "generic" set of exemptions in § 522(b)(1) to afford debtors "[u]nfortunate enough to live in ... parsimonious jurisdictions" with outdated exemptions laws a reasonably adequate alternative to those laws. 104 B.R. at 812.

In giving debtors a choice of exemption schemes ("existing" or "generic"), Congress certainly did not intend to put debtors to a Hobson's choice. The generic exemptions alternative represents a complete, free-standing exemption scheme, which provides not only for such things as cars, clothes and homestead (otherwise governed by state exemption law) but also for retirement benefits. 11 U.S.C. § 522(d)(10)(E); ... After all,

debtors who might choose the generic exemptions must *forego* the existing exemptions, including those for retirement benefits available under "other federal law." Debtors should not be penalized for making that choice, nor does anything in the legislative history suggest otherwise.

104 B.R. at 812–13 (emphasis in original). The *Komet* court then concluded by noting that the legislative history of the Code is "[e]ffusive in according sufficient property to debtors for their fresh start, with nary a hint of an intent to penalize debtors for choosing one exemption scheme over the other." *Id.* at 813. Contrary to *Goff*, then, *Komet* concludes that the overall structure of § 522(b) actually *favors* debtors retaining their retirement benefits. *Id.*

Third, *Komet* attacked the *Goff* court's argument concerning ERISA's exclusion from the aforementioned illustrative list contained in the legislative history to 11 U.S.C. § 522(b)(2)(A). *Komet* first notes that the predecessor section (Section 6) to § 522 deferred to non-bankruptcy exemption statutes as to the nature and extent of exemptions available to debtors. There was nothing in that section suggesting an intention to limit the scope or operation of a given exemption in bankruptcy, the court continued, and concluded that "[i]t is dangerous to rely upon illustrative lists in the legislative history to *add* such a limitation to the statute." 104 B.R. at 814 (emphasis in original). The court next noted that Congress has been strictly neutral as to the "existing exemptions" scheme [that based on state or other federal law] for over a century and *Goff*'s suggestion to the contrary is thus in error. *Komet* then stresses the fact that the "other federal law" language of § 522(b)(2)(A) is clear on its face and thus the illustrative list in the legislative history should not be used to amend this statutory enactment. *Id.* Concluding this third section of its analysis, *Komet* challenges the probativeness of the failure to include an item in an "illustrative list."

It is a non sequitur to say that the *failure* to *include* something on an *illustrative* list is probative of an intent to exclude it from that list. Illustrative lists (in contrast to exhaustive lists) by their nature preclude the possibility of "overlooking" a statute of the type already listed.

104 B.R. at 815 (emphasis in original).

Fourth and finally, *Komet* challenges *Goff*'s suggestion that § 522(b)(2)(A) of the Bankruptcy Code somehow "implicitly repealed" ERISA's anti-alienation section. *See Goff*, 706 F.2d at 586–87. The *Komet* court cites long-standing Supreme Court precedent that such repeals are greatly disfavored, 104 B.R. at 815, *citing with approval Watt v. Alaska*, 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981), and that the intent to repeal in this way must be clear and unequivocal. 104 B.R. at 815–16, *citing with approval St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981). When faced with an apparent conflict, *Komet* notes,

[t]he proper analysis is to determine whether the two statutes can be construed so as to avoid any conflict, and if such a way cannot be found, then decide upon a resolution which will do the most to serve the congressional intent expressed in both statutes and will least undercut that intent as expressed in either one.

104 B.R. at 815, *citing with approval In re Witte*, 92 B.R. 218, 223–24 (Bankr. W.D.Mich.1988). Applying these principles, the *Komet* court found no such implicit repeal of ERISA § 206(d) [the anti-alienation provision]. It based this finding on its interpretation of the policies behind §§ 541 and 522 summarized above. The court further noted that "[§ 522(b)(2)(A)] does not purport to limit in bankruptcy a debtor's access to federal exemptions available (and readily honored) outside of bankruptcy." 104 B.R. at 816. Thus there was no need to find a conflict with ERISA. *Id.* It was on the basis of this four-part analysis, then, that *Komet* held the ERISA pension benefit plan at issue there to be exempt from the bankruptcy estate under the "other federal law" exemption of § 522(b)(2)(A).

■ This Court has examined at length the *Goff* and *Komet* decisions and their respective progenies. On the basis of this examination, the Court finds the *Komet* analysis to be extremely well-reasoned, thorough, and convincing.[25] This Court therefore holds that the pension plan at issue here is exempted from the bankruptcy estate pursuant to the "other federal law" exemption of 11 U.S.C. § 522(b)(2)(A).

This Court is not alone in aligning itself with *Komet*. As noted previously, a growing minority of courts have done likewise. *See In re Fernandes*, No. 90–17450–CJK, 1991 WL 335005, at *2, 1991 Bankr.LEXIS 1508, at *5 (Bankr.D.Mass. Sept. 18, 1991); *In re White*, 131 B.R. 526, 530 (Bankr. D.Mass.1991); *In re Suarez*, 127 B.R. 73 (Bankr.S.D.Fla.1991); *In re Majul*, 119 B.R. 118 (Bankr.W.D.Tex.1990); *In re Starkey*, 116 B.R. 259 (Bankr.D.Colo.1990); *In re Messing*, 114 B.R. 541 (Bankr. E.D.Tenn.), *rev'd*, No. 90–000601 (E.D.Tenn. Dec. 13, 1990), *rev'd*, 944 F.2d 905 (6th Cir.1991); *In re Felts*, 114 B.R. 131 (Bankr.W.D.Tex.1990), *aff'd on other grounds*, *In re Dyke*, 943 F.2d 1435 (5th Cir.1991); *In re Burns*, 108 B.R. 308 (Bankr.W.D.Okl.1989). *See also In re Conroy*, 110 B.R. 492, 498 (Bankr.D.Mont. 1990).

Several of these courts have supported the *Komet* result on the basis of two recent Supreme Court decisions, *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) and *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). These bankruptcy courts have held that the "other federal law" language of § 522(b)(2)(A) is clear and unambiguous and thus resort to the legislative history should not be necessary. In making this assertion, the court in *In re Suarez* cited the following language from the Supreme Court's *Ron Pair* decision:

The task of resolving the dispute begins where all such inquiries must begin: with the language of the statute itself. In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." The language before us expresses Congress' intent ... with sufficient precision so that reference to the legislative history and to pre-Code practice is hardly necessary.

*In re Suarez*, 127 B.R. 73, 79 (Bankr. S.D.Fla.1991), *citing with approval U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290

---

**25.** The Court is aware that the Court of Appeals for the Fifth Circuit (of which *Komet* is a part) recently agreed with the *Goff* and *Lichstrahl* result—that ERISA does *not* constitute "other federal law" for purposes of § 522(b)(2)(A). *See Heitkamp v. Dyke (In re Dyke)*, 943 F.2d 1435, 1446 (5th Cir.1991). This does not diminish the persuasiveness of the *Komet* decision for this Court, however. *Dyke* did not even address *Komet* in its analysis. It merely relied on *Lichstrahl's* focus on ERISA's exclusion from the illustrative list in the legislative history of § 522(b)(2)(A). The *Dyke* court admitted that the infamous list "[d]oes not delineate *all* of the laws that fall within section 522(b)(2)(A)," but concluded nevertheless that "[i]t illustrates the distinctive characteristics of the applicable laws: they proscribe the assignment or alienation of benefits which are either created by federal law or related to industries traditionally protected by the federal government." *Id.* (emphasis in original).

As already noted, this Court finds *Komet's* analysis as to the illustrative list much more persuasive than this reasoning. ERISA, moreover, could arguably fall within aforementioned "[b]enefits ... created by federal law ..." language of *Dyke*. In grasping onto the artificial "peculiarly federal in nature" distinction, this Court believes that the *Goff—Lichstrahl—Graham—Dyke* courts miss the point. The central issue here is pension benefits, and most of the items contained in the nonexclusive illustrative list pertain to pension or retirement benefits— foreign service retirement payments, social security payments, civil service retirement benefits, Railroad Retirement Act annuities and pensions. (*Goff* itself recognized that "[E]RISA and the cited statutes share the common denominator of 'pension and welfare' benefits ...," 706 F.2d at 586, but then went on to make the immaterial "public[ly] funded and/or created" ["peculiarly federal in nature"] distinction.) This Court can see no basis in law and certainly none in equity for affording the pensions of certain railroad or civil service retirees substantially greater protection in bankruptcy than other retirees with ERISA-qualified pensions—especially not on the basis of reliance on a nonexclusive illustrative list in the legislative history of a very broadly worded bankruptcy code provision ["other federal law"]. ERISA is federal law and ERISA involves pensions—the central element at issue here.

(1989). *See also In re Messing*, 114 B.R. 541, 550 (Bankr.E.D.Tenn.), *rev'd*, No. 90–000601 (E.D.Tenn. Dec. 13, 1990), *rev'd*, 944 F.2d 905 (6th Cir.1991).

In *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), the Supreme Court reversed the District Court's imposition of a constructive trust on the ERISA–qualified pension benefits of a union officer who had embezzled $377,000 from the union. This constructive trust had been imposed on equitable grounds and had been affirmed by the Tenth Circuit Court of Appeals. *Guidry*, 856 F.2d 1457, 1464 (10th Cir.1988). In reversing, the Supreme Court gave strong support to the inviolability of the anti-alienation provision found in § 206(d)(1) of ERISA, holding that, without exception, the garnishment or other alienation of ERISA benefits is precluded thereby:

> [n]or do we think it appropriate to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits. Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.
>
> As a general matter, *courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text.* The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended *only* on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable. A court attempting to carve out an exception that would not swallow the rule would be forced to determine whether application of the rule in particular circumstances would be "especially" inequitable. The impracticability of defining such a standard reinforces our conclusion that the identification of any exception should be left to Congress.

493 U.S. at 376–77, 110 S.Ct. at 687, 107 L.Ed.2d at 795 (emphasis added). Although *Guidry* was a non-bankruptcy case, this statement provides a clear indication of the Supreme Court's views as to the inviolability of ERISA's anti-alienation provision, at least as against attack based on non-statutory exceptions. The fact that the Supreme Court upheld that provision as to the pension plan of an individual charged with criminal embezzlement indicates the extent to which the Court believes those plans are to be protected. Given the strong congressional policy identified by the Court in support of its decision, ERISA–qualified pension plans should arguably be immune from attack in the bankruptcy setting as well. As to this point, one bankruptcy court has noted:

> [i]t also seems incongruous that an imprisoned embezzler in *Guidry* received protection of his pension plan benefits, while an innocent, but insolvent, debtor in bankruptcy would not receive the ERISA anti-alienation protection. Surely Congress did not intend, and the United States Supreme Court would not permit, such inconsistent results in light of ERISA's policy objectives.

*In re Majul*, 119 B.R. 118, 123 n. 5 (Bankr. W.D.Tex.1990).

In addition, it is interesting to note that the Supreme Court in *Guidry* analogized § 206(d)(1) of ERISA with provisions barring garnishment of retirement benefits in four other federal statutes—all four of which are contained in the famous illustrative list in the legislative history of § 522(b)(2)(A). *See Guidry*, 493 U.S. at 372 n. 13, 110 S.Ct. at 685 n. 13, 107 L.Ed.2d at 792 n. 13. The court further

noted that it had previously held in dictum in *Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988),[26] that ERISA barred the garnishment of qualified pension benefit plans. 493 U.S. at 372, 110 S.Ct. at 685, 107 L.Ed.2d at 792. It is therefore clear that the Supreme Court has consistently interpreted ERISA's anti-alienation provisions expansively. This refutes the *Graham* court's argument that the anti-alienation provisions in the federal statutes on the illustrative list are more detailed facially than the parallel provision in ERISA. Thus, the argument continues, Congress could not have intended that ERISA constitute "other federal law" for purposes of § 522(b)(2)(A). *See In re Graham,* 24 B.R. 305, 312 (Bankr.N.D.Iowa 1982), *aff'd,* 726 F.2d 1268 (8th Cir.1984). The Supreme Court's subsequent expansive interpretation of the anti-alienation provision of ERISA belies this conclusion of the *Graham* court.[27]

Several post–*Komet* cases have held that the *Guidry* result casts doubt on the majority view as to this issue and lends support to *Komet* and its progeny. *See In re Suarez,* 127 B.R. 73, 79–80 (Bankr.S.D.Fla. 1991); *In re Wines,* 113 B.R. 787, 789 n. 2 (Bankr.S.D.Fla.1990).

Yet another bankruptcy court has sided with *Komet* in part on the basis of Sixth Circuit precedent, which, like the Supreme Court in *Guidry,* has interpreted ERISA's anti-alienation provision expansively. *See In re Messing,* 114 B.R. 541 (Bankr. E.D.Tenn.), *rev'd,* No. 90–000601 (E.D.Tenn. Dec. 13, 1990), *rev'd,* 944 F.2d 905 (6th Cir.1991). The *Messing* court noted:

[m]ore recently, the Sixth Circuit, in refusing to establish an implied exception to the anti-alienation provisions of ERISA § 206(d)(1) . . . based upon fraud, stated:

> [A] fundamental purpose of ERISA [is] to insure that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit . . . he actually receives it." [W]hether an exception should be created is a question for legislative rather than judicial judgment. Only when a literal construction of a statute yields results so manifestly unreasonable that they could not fairly be attributed to congressional design will an exception to statutory language be judicially implied. . . .

*In re Messing,* 114 B.R. 541, 549 (Bankr. E.D.Tenn.1990), *citing with approval United Metal Products Corp. v. Nat'l Bank of Detroit,* 811 F.2d 297, 300 (6th Cir.1987) (citations omitted).

In addition to the aforementioned bankruptcy courts, the *Komet* decision itself or the result reached therein has been very positively received by legal commentators generally. *See, e.g., Retirement Benefits—Exempt and Excluded? Maybe, Maybe Not,* Norton Bankr. Law Adviser (Callaghan) No. 12, at 3, 5–7 (Dec. 1990); Golden, *Protecting Qualified Retirement Plans in Bankruptcy,* 2 Faulkner & Gray's Bankr.L.Rev. 20, 24 (Winter 1991); Sterbach, Weiss, & Salerno, *Pre–Bankruptcy Planning for Professionals and ERISA Qualified Pension Plans: Are State Created Statutory Exemptions D.O.A. in Bankruptcy Proceedings?,* 94

---

**26.** For a decision expressing the view that *Mackey* "[e]xpressly characterized ERISA § 206(d)(1) as a federal exemption," *see In re Messing,* 114 B.R. 541, 547 (Bankr.E.D.Tenn.), *rev'd,* No. 90–000601 (E.D.Tenn. Dec. 13, 1990), *rev'd,* 944 F.2d 905 (6th Cir.1991).

**27.** The *Goff* court itself was not persuaded by this argument, stating that it did "[n]ot see across-the-board differences in the explicitness of the restraints against alienation in the listed statutes and in ERISA." 706 F.2d at 585. In addition, relevant Internal Revenue Code provisions and Treasury Regulations [26 U.S.C.

§ 401(a)(13) (1988) and 26 C.F.R. § 1.401(a)–13(b)(1) (1982) ] interpreting the ERISA tax qualification provision are more detailed and explicit in their prohibitions against alienation and assignment. *See Goff,* 706 F.2d at 584 n. 26, 585 n. 28. Thus any differences in the explicitness of ERISA's anti-alienation provisions with those of the other federal statutes in the illustrative list are insignificant for purposes of this analysis. *See* Note, *Exemption of ERISA Benefits Under Section 522(b)(2)(A) of the Bankruptcy Code,* 83 Mich.L.Rev. 214, 229–230 (1984).

Comm.L.J. 229, 243–46 (1989); Note, *Exemption of ERISA Benefits Under Section 522(b)(2)(A) of the Bankruptcy Code*, 83 Mich.L.Rev. 237 (1984) (pre-*Komet* ).

Policy considerations provide further support for the Court's holding. A fundamental policy of ERISA is the protection of the interests of participants in employee benefit plans and their beneficiaries. *See* 29 U.S.C.A. § 1001(b) (West 1985). Granting creditors in bankruptcy access to a debtor's ERISA–qualified pension benefits to satisfy their claims would clearly thwart this policy. Exempting ERISA pension plan benefits from the bankruptcy estate is also consistent with a fundamental purpose of the exemptions contained in the Bankruptcy Code—providing debtors a "fresh start." *See* Wohl, *Pension and Bankruptcy Laws: A Clash of Social Policies*, 64 N.C.L.Rev. 3, 24–25 (1985).

> [A]warding the bankrupt's retirement benefits to the trustee [in bankruptcy] would deprive the bankrupt of a genuine fresh start not because of the bankrupt's immediate need for the funds but because to recognize the trustee's claims against the funds would leave a cloud of prebankruptcy debt hanging over the bankrupt's future. Providing the bankrupt with a "fresh start" means assuring him that assets to which he may become entitled *in the future* will be acquired free of any prebankruptcy obligations. Future wages may not be garnished to pay those obligations and pension benefits received in the future, even though they may be the product of prebankruptcy contributions to a pension fund, are a substitute for future wages and thus pass to the bankrupt free of the claims of prebankruptcy creditors.

*Id., citing Turpin v. Wente (In re Turpin)*, 644 F.2d 472, 474 (5th Cir.1981). Exempting the ERISA benefits is also consistent with the maxim that "exemption statutes are to be liberally construed in favor of the debtor." *In re Cilek*, 115 B.R. 974, 989 (Bankr.W.D.Wis.1990). While fairness to

creditors is another fundamental policy of the Bankruptcy Code, this Court does not believe that to be sufficient grounds alone upon which to carve out a non-statutory exception to ERISA's anti-alienability provisions. This is especially true in light of the recent Supreme Court decisions discussed earlier which have upheld those anti-alienability provisions against repeated attack. *See, e.g., Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). Nor does this Court choose to interpret the relevant statutory language at § 522(b)(2)(A) in such a way as to produce a result inconsistent with these weighty policy considerations. "To hold that [ERISA's protections from creditors' claims for qualifying plans] are ... ineffectual, simply because Congress failed to specify ERISA in a nonexclusive list of legislative examples in the legislative history, would fly in the face of ERISA's principle [sic] purpose." *In re Burns*, 108 B.R. 308, 315 (Bankr. W.D.Okl.1989). The primacy of the anti-alienability feature of ERISA–qualified plans is consistent, moreover, with ERISA's stated purpose:

> [t]o assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society.

*NCNB Texas Nat'l Bank v. Volpe (In re Volpe)*, 120 B.R. 843, 847 (W.D.Tex.1990) *citing* S.Rep. No. 127, 93rd Cong., 2d Sess. (1974), *reprinted in* U.S.C.C.A.N. 1974, pp. 4639, 4849. Only if ERISA pension plan funds are immune from alienability will this purpose be effectuated.

The Court's result, moreover, avoids the anomalous result that, under certain circumstances, ERISA's protections for qualifying plans are available to debtors outside of bankruptcy, but not to those in bankruptcy.[28] Given the fundamental bankrupt-

---

**28.** This is the situation in states which have opted out of the federal exemption scheme and whose pension exemption statutes have been held to be preempted by ERISA. It is in these

states that, in spite of the best efforts of Congress in enacting both ERISA and the federal exemptions of § 522(d), and the best efforts of numerous state legislatures in enacting exemp-

cy goal of rehabilitation of the debtor, denying ERISA protection to pension benefits of these debtors who often need it most—those in bankruptcy—could not have been intended by Congress. *See In re Starkey,* 116 B.R. 259, 265 (Bankr.D.Colo.1990); Sterbach, Weiss & Salerno, *supra,* at 250 n. 91.

A final policy consideration is warranted here. It is often said that bad facts make bad law. Some of the cases which have addressed this issue have involved substantial sums of money in ERISA–qualified plans and debtors facing allegations of criminal misconduct. *See, e.g., In re Hirsch,* 98 B.R. 1 (Bankr.D.Ariz.1988), *aff'd, Siegel v. Swaine (In re Siegel),* 105 B.R. 556 (D.Ariz.1989). *See also In re Burns,* 108 B.R. at 314; Sterbach, Weiss, & Salerno, *supra,* at 251 n. 93. Courts have been understandably reluctant to shield the pension plans of such debtors from the claims of creditors. This case, however, is not such a case. There are no allegations of any criminal misconduct and the amount involved ($17,549.50) is not substantial in terms of pension plan accounts.

One other argument of the trustee should be addressed at this point. The trustee argues that the result the Court reaches here would be anomalous given the fact that a limited exemption is provided for under 11 U.S.C. § 522(d)(10)(E).[29] Since the state and other federal law exemptions under § 522(b)(2)(A) are provided for "in the alternative," the argument continues, ERISA benefits could therefore not also be excludable under the second alternative. This argument is based on the premise that the *content* of the respective exemption scheme alternatives must be mutually exclusive. Since this premise is false, this argument of the trustee must fail. The *choice* of which exemption scheme the debtor chooses is mutually exclusive; the debtor must choose *either* the generic federal-law exemptions *or* the applicable state-law (and "other federal law") exemptions. This is the meaning of the "in the alternative" language of § 522(b)(1). This language does not mean that the *content* of the respective exemption schemes must be mutually exclusive. Both the generic federal exemptions and state-law exemptions, for example, provide for a homestead exemption. *See* 11 U.S.C. § 522(d)(1)(A) (West 1991) (exemption amount $7,500). *See, e.g.,* WIS.STAT.ANN. § 815.20 (West Supp.1990) (exemption amount $40,000). The argument that the content of the exemption schemes must be mutually exclusive is therefore clearly in error. This consideration also answers the argument that, since the federal exemption of § 522(d)(10)(E) is limited to the amount "reasonably necessary for the support of the debtor," Congress could not have intended to allow exemptions of unlimited amounts through the "other federal law" language of § 522(b)(2)(A). *See Humphrey v. Buckley (In re Swanson),* 873 F.2d 1121, 1124 (8th Cir.1989). As shown through the homestead exemption example above, the alternate exemption scheme was meant to provide two parallel schemes, not duplicative schemes. *See Komet,* 104 B.R. at 816 n. 32. The amount of the homestead exemption, for example, differs from state to state and, as noted, it was not intended

---

tion laws pursuant to express congressional authorization, the bankruptcy debtor is left pensionless. This result occurs because the state law exemption is preempted and the debtor has no recourse to the limited exemption contained in 11 U.S.C. § 522(d)(10)(E), since the state would have opted out of the federal exemptions.

**29.** § 522(d)(10)(E) provides:
[ (d) The following property may be exempted under subsection (b)(1) of this section:
(10) The debtor's right to receive—]

. . . . .

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, *to the extent reasonably necessary for the support of the debtor and any dependent of the debtor,* unless—
(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
(ii) such payment is on account of age or length of service; and
(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408, or 409).
11 U.S.C. § 522(d)(10)(E) (West 1991) (emphasis added).

that each state exemption match or duplicate the federal exemption of $7,500 in § 522(d)(1). *See id.* at 813 n. 27. The fact that such differences are also evident in the pension exemption provided by the various states and the federal government, therefore, is not surprising. Nor is it significant for purposes of this analysis. *See Boon v. Miner (In re Boon)*, 108 B.R. 697, 705 (W.D.Mo.1989).

On the basis of the aforementioned case law, legislative history, statutory provisions, policy and equity considerations, then, this Court holds that § 206(d)(1) of ERISA constitutes "other federal law" for purposes of § 522(b)(2)(A) of the Bankruptcy Code. The debtors in this case may therefore claim their profit-sharing plan as exempt. Accordingly, the trustee's objection to the debtors' claim of exemption is denied.

### CONCLUSION

The Court's decision holds that the debtors' profit-sharing plan account is excludable from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2) and ERISA's anti-alienation provision. This decision further provides two alternative means by which the debtors' pension plan benefits are exempted from the claims of creditors in bankruptcy: 1) (Part II of the Court's decision) the Wisconsin exemption statute for pension benefits—WIS.STAT. § 815.18(31); and 2) (Part III of the Court's decision) ERISA's anti-alienation provision [29 U.S.C.A. § 1056(d)(1) ] as "other federal law" pursuant to 11 U.S.C. § 522(b)(2)(A). The Court bases its decision on the relevant case law, statutory provisions, policy considerations, legal commentators, and the arguments and authorities presented by the parties in their briefs. By way of summary, then, the Court makes the following holdings as to each of the issues presented in this matter:

### Issue I

1) The "applicable nonbankruptcy law" language of 11 U.S.C. § 541(c)(2) includes ERISA's anti-alienation provisions. The debtors' pension plan account is thus excluded from the bankruptcy estate pursuant to § 541(c)(2) in conjunction with 29 U.S.C. § 1056(d).

### Issue II

Alternatively,
2) § 815.18(31) of the Wisconsin Statutes "relates to" ERISA plans for purposes of 29 U.S.C. § 1144(a) but is saved from preemption pursuant to § 514(d) of ERISA [29 U.S.C. § 1144(d) ]. Preempting WIS.STAT. § 815.18(31) would modify or impair § 522(b) of the Bankruptcy Code in contravention of 29 U.S.C. § 1144(d). The debtors' pension plan account is thus exempted from the bankruptcy estate pursuant to WIS.STAT. § 815.18(31).

### Issue III

Alternatively,
3) ERISA's anti-alienation provision constitutes "other federal law" pursuant to 11 U.S.C. § 522(b)(2)(A). The debtors' pension plan account is therefore exempted from the claim of the bankruptcy trustee pursuant to § 522(b)(2)(A) in conjunction with 29 U.S.C. § 1056(d).

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.